Honolulu, December 12, 1853.

---

## JANUARY TERM, 1854.

---

### PIERCE HEGARTY vs. B. F. SNOW.

The law of sales implies a warranty that the article purchased is merchantable, that is, that it possesses some value—that it is fit for some purpose, and can be sold at some price. Secondly, the law implies a warranty that the article is reasonably fit for the use for which it is *known* to be intended.

The law implies a warranty that goods are merchantable in all cases where, from their nature or situation at the time of sale, an examination of them is impossible.

But where the buyer can examine the goods if he choose, and especially where he does so, he must take the consequences, if through carelessness or negligence, he omit to make a thorough examination. The law will not protect the buyer in such cases, where the seller has not undertaken to furnish an article of a particular kind or quality, and has done nothing to mislead the buyer.

The law makes a distinction between the sale of provisions in small quantities for domestic use and consumption, and the sale of large quantities of provisions *as merchandise*.

Where the contract has been executed, and the goods paid for, the vendee has no right, in the absence of fraud, to return them upon their failure to correspond to the warranty, but must sue upon the warranty, and he can recover the difference between the price paid and the actual worth of the goods.

This was an action brought by the plaintiff to recover the price of 150 bbls. of Rye Flour, purchased by the plaintiff of the defendant in December, 1852, for exportation to San Francisco, together with all damages resulting to the plaintiff from his inability to sell the flour on account of its sourness. The ground of the action was an alleged violation of a warranty on the part of the defendant that the flour was sweet and in marketable condition.

The facts as they appeared in evidence were, that the flour was purchased without any express warranty as to its quality, at $14 per bbl., and that, at the time of the purchase, it was not open to inspection, but in the hold of the bark Aucland, lying at the wharf in Honolulu. That subsequently it was rolled out on the wharf and delivered to Hegarty's agent, who, discovering that some of the barrels were stained and in bad condition, refused to accept them, and they

were rolled aside. Snow found fault at the rejection of these stained barrels, and said that their discoloration outside was no evidence that the flour was bad inside, whereupon the agent consulted with Hegarty, after which he procured a flour trier and examined the barrels. The agent testified that he thought the flour upon taste and smell to be sour, and so informed Hegarty, but Snow thought it was not, and Hegarty subsequently accepted part of the stained barrels, though not all. The flour was shipped to San Francisco with lumber and other cargo, and on its arrival there was found to be sour, and nearly, if not quite unsaleable. The plaintiff brought the flour back to Honolulu and offered to return it to the defendant, who declined receiving it, upon which the plaintiff stored it in the Custom House, and brought this action, not only to recover back the money he had paid for the flour, but the freight on the same to and from San Francisco, together with storage and all other expenses consequent upon the purchase.

The case was conducted and argued with marked ability by Messrs. Montgomery and Blair for the plaintiff, and by Mr. Bates for the defendant, the former contending that there was an implied warranty in the sale, that the flour was sweet, and suitable for exportation to San Francisco, the purpose for which it was bought, and that the doctrine of *caveat emptor* did not apply to the plaintiff in this case, inasmuch as the flour was not open to inspection at the time of the purchase, but lying in the hold of the bark " Auckland." The counsel for the defendant argued on the contrary, that, in the absence of any express warranty or deception on the part of the defendant, no implied warranty could be raised as to the quality and condition of the flour; and that the doctrine of *caveat emptor* did apply in this case, as the plaintiff had the opportunity of inspecting the flour on its delivery, and actually did inspect such barrels as he thought unsound, and also rejected some.

CHIEF JUSTICE LEE charged the jury in substance as follows, viz:

This case, gentlemen of the jury, is an interesting one, and no more interesting than important, involving as it does, serious questions of law, affecting the every day commerce and business of the islands; and which, hitherto, have never been fully discussed and settled in this court. We are called upon in this case to establish rules for the government of our merchants and others in all their sales and purchases. How important then, that while we are free and unembarrassed by former decisions and precedents, we should establish sound rules—rules which shall have a firm foundation in reason, justice and equity, and such as shall promote fair dealing, good morals, the highest honor and the public weal. Instead of adopting the harsh old doctrine of *caveat emptor*, or, buyer beware, which requires the vendee to be constantly on his guard against the gross representations, the deceitful praises and cunning lures of the vendor, we should lay down such rules as will check fraud of every kind, protect the ignorant, and teach the vendor that in all the representations made by him as an inducement to the sale of his goods, he should tell the truth, the whole truth, and nothing but the truth. Such rules as will require of both vendor and vendee not only good faith, but the most scrupulous good faith; not only honesty, but the most exalted honesty, or, as that great and good jurist Judge Story has expressed it, *uberrima*

*fides* in all that relates to the sale and purchase. The maxim of *caveat emptor*, or that the purchaser buys at his own risk, unless the seller gives an express warranty. which is contended for on the authority of the leading case of Chandelor *vs.* Lopus, and the long line of cases which followed that precedent, can no longer be said to hold that empire over the law of sales, which it formerly did; for the modern decisions on this subject have so trenched upon the doctrine as to reduce it to a mere shadow.

I do not consider the case of Chandelor *vs.* Lopus good authority for the purpose for which it is cited; for it was decided on the pleadings of the case, and not on its merits. The old common law rule of *caveat emptor*, says Story on Sales, has been losing ground, and the law has been tending towards the doctrine of the Roman law, which is its antipode—*caveat venditor*, or, beware seller—until it now occupies a middle ground between the two, by requiring the strictest good faith on the part of the seller in all that he says and does, and throwing on the buyer the responsibility for any foolish mistake, or wrong conclusions, which may result from his trusting to his own judgment.

It is not contended, in this case that there was any express warranty of the quality of the flour, but it is said the law implies one. It is true that the law does imply a warranty in some cases; for example, it implies a warranty that the article purchased is merchantable, that is, that it possesses some value—that it is fit for some purpose, and can be sold at some price. Secondly, it implies a warranty that it is reasonably fit for the use for which it is *known* to be intended; that is, if a man sells an article for a particular purpose, he thereby warrants it fit for that purpose.

But lest I should be misunderstood, or state this doctrine of implied warranty too strongly, let me illustrate my idea by examples. The law will imply a warranty that goods are merchantable in all cases where, from their nature or situation at the time of the sale, an examination of them was impossible. Thus, if goods be at sea, or stowed in the hold of a ship, as in this case, or in a storehouse, so that only the surface can be seen; or if they be in bales, so that an examination of the centre cannot be made without tearing each bale to pieces, the seller will be understood to warrant them to be merchantable, and of the quality demanded and expected by the buyer. He cannot, says Lord Ellenborough in the case of Gardner *vs.* Gray, without a warranty, insist that the article shall be of any particular quality or degree of fineness; but the intention of both parties must be taken to be, that it shall be *saleable* in the market under the denomination mentioned in the contract between them. But where a man can examine the goods if he choose, and especially where he does examine them, as it is said Hegarty did in this case, he must take the consequences, if through carelessness or negligence he omit to make a thorough examination. The law will not protect a man from the consequences of his own carelessness in such cases, where the seller has not undertaken to furnish an article of a particular kind or quality, and has done nothing to mislead the buyer. This, if I mistake not, is the language of all modern writers and judges, on the law of sales.

But, say the learned counsel for the plaintiff, this is a sale of provisions, and whatever may be the law in reference to other goods, in

the sale of provisions there is always an implied warranty that they are sound and wholesome. It is true that an implied warranty of soundness is raised in the sale of provisions, on the ground that such a warranty is necessary for the preservation of health and life. But a distinction has been made between the sale of provisions in small quantities for domestic use and consumption, and the case of a sale of large quantities of provisions, *as merchandise,* for exportation. For example, if a man should step into one of our stores and order a barrel of flour to be sent up to his house, for family use, there would be an implied warranty that it was sweet and wholesome; but if he should ask for flour, and buy a hundred barrels, without a single question as to its condition and quality, the flour being open to his inspection, and he relying solely on his own judgment, the case would be far different. In the latter case he has bought the flour in the same manner as he would any other merchandise, and in the absence of any misrepresentation or act on the part of the seller, calculated to mislead him, he must be supposed to have taken the risk of the sweetness of the flour upon himself.

But even granting, says the defendant, all that the plaintiff contends for—that the flour was in the hold of the ship and could not be examined, and that there was an implied warranty of sweetness, still he has no ground for this action. The flour was open to his inspection, when it was delivered on the wharf, he undertook to examine it, he rejected certain barrels of it as sour, accepted the rest, shipped it to San Francisco, and after all this, will he be permitted to treat the purchase as a nullity, and throw the flour on my hands ? Has there been any false representation in this sale—has there been any breach of an implied warranty in the case ? If there has been, then the plaintiff is entitled to recover, otherwise not.

If the plaintiff is entitled to recover at all, it is said he should recover not only the whole purchase money with interest, but the freight of the flour to and from San Francisco, together with storage and all other expenses incurred by the plaintiff on account of this purchase. The rule governing this point is, that where the contract has been executed, and the goods paid for, the vendee has no right, in the absence of fraud, to return them upon their failure to correspond to the warranty, but must sue upon the warranty, and he can then recover the difference between the price paid and the actual worth of the goods, which in this case, so far as we have any evidence in the matter, is shown to be the difference between $14 and $8 per barrel. In no event could the plaintiff recover the expenses incurred by him in bringing the flour back from San Francisco, and for storage, &c., subsequent to his arrival here, for it is the duty of the vendee, when at a great distance from the vendor, and the goods cannot be returned without a great expense, to give notice to the vendor, and await a reasonable time for his orders, after which he may proceed to sell the goods on account of the vendor, and he will then be allowed to recover the difference between the net proceeds of such sale and the price paid.

The jury, after a short absence, returned a verdict for the defendant.

Mr. Montgomery and Mr. Blair, for plaintiff.

Mr. Bates for defendant.